Thank you, Your Honor. Good morning, Your Honors. I'm Michael Schein. I represent Sea Hawk Seafoods, a shoreside seafood processor with a plant in Valdez, Alaska, that was damaged by the Exxon Valdez oil spill that occurred way back in March 1989. Let me get one fact straight. The damage to Sea Hawk did not damage any of the physical property of Sea Hawk, any of the employees physically of Sea Hawk. It was simply the removal of the catch, which Sea Hawk would normally get, right? That's correct, Your Honor. Economic loss. We're here today to finish the work begun by this Court in its decision in In re. Exxon Valdez, handed down in 2001, which I'll call Exxon Valdez I. In Exxon Valdez I, this Court held that the Alaska Act is Sea Hawk's only claim, and it's not preempted by maritime law. And that's the law of the case. That's just what we have. That's correct, Your Honor. Today, we ask the Court to hold that Alaska prejudgment interest law follows along with the Alaska Act, governs the remedy under the Alaskan Act, and is not preempted by maritime law. This Court in Exxon I found, quote, Alaska's strong interest in protecting its waters and providing remedies for damages resulting from oil spills outweighs the diminished Federal interest in achieving interstate harmony through the uniform application of the Robbins-Drydock rule. It's pretty standard law that prejudgment interest in a diversity case is governed by State law, isn't it? That's correct, Your Honor. But there's been this maritime exception that's built up around Western Pacific and Columbia Brick. And in maritime cases, the other rule But if it's a State law claim, why is it — I don't understand why that would even come up. That's our point, Your Honor. That's our argument, that this is a State law claim. It's necessary under the authorities we've cited you for the Court to apply the whole of State law with all its conditions and qualifications, and that includes Alaska prejudgment interest law. Well, but Columbia Brick, just to play devil's advocate, involved a diversity case in Oregon. Yes, Your Honor. State law applied, right? Well, Your Honor, Columbia Brick was a maritime cargo insurance case. And there are special rules. Special rules apply to maritime cargo insurance. And that's what the Court cited to in its opinion, those special rules. First, they cited to maritime law special rules as to the trigger of liability, which was negligence, and the amount of damages, how you calculate damages. But why jump from there into admiralty law for prejudgment? Why didn't they use diversity Oregon law? Well, the reason stated in that decision is it said that State law applies, this is Columbia Brick, quote, in the absence of a judicially fashioned admiralty rule was one prong of the test. And that's the standard rule for maritime insurance. It said we have a judicially fashioned admiralty rule, and that is the Western Pacific rule. But that is a rule that is specifically applicable to maritime insurance policies. And what Columbia Brick never did was do a preemption analysis like this court did in Exxon Valdez 1. They didn't need to because it had the specialized claim of maritime insurance in front of it. Western Pacific didn't need to either because it was a classic maritime claim involving a collision at sea. But our case has just a State law claim. And therefore, the Jensen preemption analysis is the correct analysis to determine what law to apply. Applying the Jensen preemption analysis, the basic rule as stated in ASCU, United States Supreme Court, is a State in the exercise of its police power may establish rules applicable on land and water within its limits, even though those rules incidentally affect maritime affairs, provided the State action, one, does not contravene the essential purpose of an act of Congress. Two, does not work material prejudice to a characteristic feature of maritime law. Or three, does not interfere with the proper harmony and uniformity of maritime law. This court already found in Exxon Valdez 1 that application of Robbins rule does not violate these. The same is true of prejudgment interest. First prong, application of prejudgment interest law of Alaska does not contravene the essential purpose of an act of Congress. Exxon Valdez 1 already found there is no act of Congress directly applicable to the Exxon Valdez oil spill. That's at page 1251. Second, the rule of Western Pacific and Columbia Brick that you look to section 1961 of title 28 as a guideline for the rate, unless the equities tell you to do otherwise, is a judge-made rule. It's not what the statute says. The actual language of section 1961 doesn't say anything about prejudgment interest. It only applies to post-judgment interest. The legislative history shows that prejudgment interest language was considered with respect to section 1961, but Congress didn't enact it. Clearly, the essential purpose of section 1961 is to govern post-judgment interest. So, and finally, the judge-made rule allows the court to not follow the statute when the equities of the case require a different rate. So there's no contravention of an act of Congress here. Furthermore, there's not even any contravention of the essential purpose of the judge-made rule in Columbia Brick because the purpose of the Maritime Rule and Alaska law of prejudgment interest is exactly the same. Two things, to provide full compensation for the injured party and to discourage delay in litigation. What is the difference between the two rates? The rate under state law that was granted was about 3.5% for some of the damages and about 4% for other of the damages. The rate under Alaska law is 10.5%. The second prong of the Jensen analysis is whether application of Alaska prejudgment interest law would work material prejudice to a characteristic feature of maritime law. And characteristic feature is a term of art, which Exxon Valdez I and other decisions defines. It's either one that originated, a rule that originated in admiralty, or a rule that has exclusive application in admiralty. The judge-made doctrine of borrowing the section 1961 rate did not originate in admiralty. Prior to, just prior to the time that the federal statute was amended to be in its essentially applicable form for this case, the Eighth Circuit held in an ERISA case that it would look to section 1961 as a guide to setting prejudgment interest. Shortly after the amendment, but before this court's first decision, maritime decision in Western Pacific, another ERISA case came down, and that's the Conn versus Keystone Resources case, saying we're going to look to section 1961. And then on February 8, 1984, which was before this court's Western Pacific, the Sixth Circuit made essentially the same ruling in an employment discrimination case. So clearly the rule of looking to section 1961 did not originate in admiralty. Neither is it exclusively applicable in admiralty. These cases I've just cited indicate it applies in ERISA, it applies in employment discrimination. Other cases we've cited show that it's applied in bankruptcy. It's been applied in civil rights cases. And in fact, in a United States versus Gordon, it was applied to the Mandatory Victims Restitution Act. So the second prong of the Jensen preemption analysis does not indicate that the Alaska Prejudgment Interest Law should be preempted. And very interestingly, Exxon, you know, they didn't even argue the contrary of our preemption analysis. They didn't even take it on. The final and third prong, that there be no interference with proper harmony and uniformity in maritime law, but cases recognize that perfect harmony is impossible. Therefore, some lack of uniformity is not a basis for finding preemption. For example, in American dredging, the United States Supreme Court said the requirement of uniformity is not absolute. So the courts apply a balancing test. They balance the state, the federal interest in uniformity against the state interest in having its law applied. The federal interest is quite low here for two reasons. First, the rule we're talking about, prejudgment interest, is not a primary maritime rule. It doesn't govern primary conduct. In other words, it doesn't govern shipping lanes, navigation, outfitting of ships, seamen's liability or recovery for accidents. Those are the primary maritime areas of concern. Second, the federal interest in uniformity is quite low because the rule of Western Pacific is so discretionary that it doesn't really result in much in the way of uniformity. Certainly not as much as the Robbins rule that was already found not to be sufficient to outweigh the state's interest. You apply under the Western Pacific Columbia BRIC rule, you apply Section 1961 unless the equities of the particular case require a different result. And that's led to a wide variation in results. And we cited examples in the brief of appellant at pages 37 to 38. Also, there's discretion, or many judges read the rule as there being discretion. There may be some question about this. Kennedy. Does that rule that you just cited about the equities work the other way around? Should we remand it to the district court to make a determination that the equities require federal interest rates to be applied rather than the state interest rates? No, the rule says that you look to the state, the rule state in Columbia BRIC says you look to the state, excuse me, the federal statutory rate unless you find that the equities of the case require some different rate. Now, that different rate could be a state rate or it could be some other guideline. What Western Pacific, for example, looked to borrowing rate, we put in evidence of Seahawks borrowing rate. Another rate might be the company's return on equity over the time period. But as I understand your argument, it is that there's no room for equity once the – that there's a legal question whether federal law or state law applies. And if state law applies, it doesn't contain within it an equitable weighing to give to the rate. That's correct, Your Honor. We have presented our primary argument is a legal error as a matter of law saying that the court was bound to apply the state prejudgment interest rate, which is fixed at 10.5%. I was going to ask you about that. Is there any doubt at all about the applicable rate? And I guess let me just make that a more practical question. If we were to agree with your legal argument that state law governs the prejudgment interest rate, would we remand to the district court to determine what that is, or would we do it ourselves, or what would be the outcome? Your Honor, there was some challenge by Exxon about the correct rate in the lower court papers in this motion, and they did not make any challenge about the actual rate on appeal. So I would say that issue is gone. There is really no question. 10.5% was the rate set by Alaska 930. I forget the exact section, but it's in the brief. And that section was later amended in 1997, I believe it was. And the act that amended it said very clearly, this only applies for cases, causes of action that accrued after the date. It was a date in 1997. And the Alaska legislature knew what it was doing there. I mean, it has been very careful not to go back and affect causes of action arising out of the Exxon Valdez oil spill. So cases in Alaska that we've cited have been held, look, that change only applies afterwards. So I think it's rock-solid law that 10.5% applies. And that's the rate you asked for under Alaska law. That's correct. That's correct. There is a wrinkle on this, and that's the question of compounded interest versus simple interest. And I think that our position, as we put forward in the brief, is that Exxon voluntarily stipulated to compound interest, and that it's bound by that. And you'll find that at Seahawks Supplemental Excerpt of Record, page 8 in the footnote, which is a brief from Exxon, submitted in the motion papers below. We had presented to the Court the question of whether it should be compound or simple. Exxon said, we've already agreed to pay compound. It's not an issue. So that issue, as far as I'm concerned, has been removed from the case by stipulation. Well, we'll find out what opposing counsel thinks. Assuming the thing they don't want to assume, what would be the rate and how would it be applied? Right. So finally, with respect to interference with proper harmony and uniformity, also there's a wide range of outcomes in the Federal decisions, because courts don't know when the rate, when to pick the rate, whether it's the date the cause of action accrued or the date the injury was suffered or the date of a judgment or settlement. And courts do a wide range of different things. Some, Saavedra is a Ninth Circuit decision that used a fluctuating rate at different times. So the basic point is that the Federal interest in uniformity in application is ruled so low because it doesn't result in uniformity. On the other side, the State interest, as I've already quoted to you, has been characterized by the Ninth Circuit  against the and giving its citizens remedies against the harms of oil spills. So this Court, we're asking the Court to finish the job it started in Exxon Valdez No. 1 and rule that the entire Alaska Act applies. I'd like to reserve the remaining, I think, 414 for rebuttal and thank the Court very much for your attention. You may do that. And we'll hear next from counsel for Exxon, which I believe is Mr. John. Yes, Your Honor. Thank you. I don't think there will be too much trouble aiming this at my channel. May it please the Court, John Daum for ExxonMobil Corporation. I think I need to begin by putting what happened here in its procedural context. Exxon paid Seahawk for its 1989 losses in 1990. Losses at issue here are from 1992 and 1993. When the remand came back after the Exxon Valdez case, the first case that Mr. Daum referred to, we entered into a settlement with Seahawk under which we paid them the principal amount of those damages, but the parties could not agree as to the proper interest rate. So that settlement provided, consistent with 28 U.S.C. 1961, for the Court to fix the interest rate, which would be compounded. Now, Seahawk didn't tell us at that time just what it was asking for. And, in fact, when it came into court to talk about the interest rate, it asked for a variety of different interest rates, its own supposed borrowing cost, the Alaska statute, Exxon's supposed profit from the transaction. But the fact is that the answer to the question about simple versus compound interest is that the application of the Alaska statute to this case, by its own terms, is not possible. Because the stipulation provides for interest to be compounded, the Alaska statute provides for simple interest. And the reason that the stipulation provided for compound interest was that they weren't stipulating to apply in Federal interest, were they? Pardon me? That doesn't mean they were stipulating to apply in the Federal rule, does it? I don't know what they were stipulating to on their side, Your Honor. On our side. On our side. Was the district court required to decide whether Alaska or Federal law applied? Yes. As Seahawk presented its case to the district court, it was. So why couldn't the party stipulate in a settlement agreement that even if Alaska law applied, that they would apply, it would be compounded? Parties could have stipulated to that, Your Honor. I don't think they did or that that's the effect of the stipulation. This came against a background where the precise question of what interest should be paid in the Exxon Valdez cases had already been litigated before Judge Holland. In Order 299, which dealt with the fishermen's claims, several, many years before this controversy arose, Judge Holland found that 28 U.S.C. 1961 was the right measure for interest in maritime cases and applied it. The problem is, for your side as I see it, though, is that our earlier decision held that Seahawk could recover, if at all, only under State law. So we know that we're only under State law, and that the ordinary rule is that when there's a substantive part of State law that comes with the claim. That's the usual rule. And I guess what I'm having difficulty seeing is why that usual rule doesn't apply. You're not dealing with fishermen's claims in the same way that you were describing earlier. That is the difficulty in the case, Your Honor. And the answer to it, I'm not going to pretend that the intersection of maritime law and State law is simple. But the answer to Your Honor's question is Columbia Brickworks, which is a 1984 decision of this Court. The facts were it was a maritime insurance case, and the claim was marine in nature are governed as to the merits by State law, as established in a Supreme Court case called Wilburn Boat. In Columbia Brickworks, the plaintiff came in and made exactly the argument that Seahawk makes here. They said, the rule of decision in this case on the merits is true. Therefore, Oregon interest rate law ought to apply, not the federal maritime standard, which is 28 U.S.C. 1961, unless the equities are different. And this Court agreed with that. It said that in a marine insurance case, the Oregon rule. Now, what Seahawk says about that, and the first thing to be noticed about that case, is that it completely rejects the principal argument that Seahawk makes in its brief, which is that you have to apply the whole of State law, because that's the one thing that Columbia Brickworks clearly did not do. But that is still the ordinary rule, unless there is an exception for maritimeness. That is the ordinary rule in a diversity case, I agree with Your Honor. It is not the rule in the Ninth Circuit in a maritime case. It is not the rule in most of the other circuits. So we're still left to decide what is a maritime case, and why is this claim for Well, what Seahawk says is there's a special rule for marine insurance cases, and that this is different because that's the argument they make. And what they say is in a tort case, you ought to apply something called Jensen preemption, which is a reference ultimately to a decision by the Supreme Court in, I think, 1917 called Southern Pacific v. Jensen. You were saying that in Columbia, in the diversity case in Oregon, they applied the Oregon State law as to coverage and damages under the marine insurance policy. Did I understand you to say that? Yes. Well, that's not true. If they determined what was the extent of coverage and what was the extent of damages by reference to admiralty law. Now, there may be Oregon admiralty law. Is that what your point is? No. They referred to a variety of cargo cases. They discussed and cited a number of what they called cargo cases. Some were marine cargo cases. Some were railroad cargo cases. Some were admiralty cases. Some were probably under State law or general Federal law, because it was a cargo case. Well, the The area I'm referring to in Columbia Brickworks is here at page 1071. And It says in cases tried, I'm looking at 1071, in cases tried under admiralty principles only, the principles of Federal law govern a plaintiff's entitlement to prejudgment interest, even though the plaintiff may have invoked diversity jurisdiction in his complaint. So the question under Columbia is, was the case tried or, in this case, settled under admiralty principles only? And that can't be true because we said in our earlier published opinion in this case that only State law could grant any relief. But the key part of Columbia Brickworks is the next sentence, Your Honor. However, State law will control issues related to maritime insurance policy. Which this isn't. Which this isn't. In the absence of a Federal statute, a judicially fashioned admiralty rule or a need for uniformity in admiralty practice. But that is an exception to the exception. I guess I just don't see how this, we even get there, because this is not a case tried under admiralty principles, not only not only, but not at all. Well, I think the question is whether Columbia Brickworks is limited to contract cases or whether it applies to tort cases as well. The, in Columbia Brickworks was a marine insurance case where the rule of decision, as in all marine insurance cases, where the court accepted that the rule of decision in a marine insurance case would be a matter of State law. I don't see how you say that. It says right above the line that Judge Graber just wrote that in diversity cases, admiralty issues are generally covered by maritime law. Yes. And as I read Columbia Brickworks, Judge Sneed used maritime law to determine what would fully compensate Columbia Brick for the amount of loss of the damage. And so I don't see any reference to any type of law bottoming the decision as to Oregon statute cited on interpretation of the contract. There's not an Oregon statute cited as to the damages. It's all admiralty law. Well. Unlike here, where we have an Alaska statute cited for strict liability by diversion of hazardous materials. Well, we're relying on this one passage of Columbia Brickworks, Your Honor. And I do think you ought to take a look. I understand what Your Honor is saying, but what you should take a look at is you ought to take a look at the Wilbur and Boat case. You ought to take a look at the Bohemia versus Home Insurance Company case, which is cited by Columbia Brickwork. And what they stand for is the general rule that in a marine insurance case, the substantive rules of law are given by state law. That's what this passage in Columbia Brickworks, we think, is saying, which is that in marine insurance cases, the substantive rules of law are state law. But the Court's Act is clearly applying here federal law to the interest rate question. And, you know, at the end of Columbia Brick, Your Honor, the opinion that caught my eye was that the Court noted that applying the federal rate of interest generates a higher rate of interest than the state court, and that the court in Columbia Brick recognized that when equities would apply, the state district court was free to use the state rule of interest, all looking towards whether or not, you know, what's the appropriate rate of interest in a particular case. So, I mean, no, I guess I just note with that, it's not a hard and fast rule that you would like to read this language in Columbia Brick. Well, the federal rule has enough flexibility to look at the equities of the case. That's right. But Columbia Brick said you use the federal rule and you can look at the equities of the case. We would concede that Judge Holland, applying the federal rule, could have chosen as a matter of equity to adopt the state interest rate. He could have done that. He didn't. And, you know, the underlying equities of this case are, of course, that the plaintiff is seeking an interest rate of 10.5 percent in a world where interest rates have been in the 3 or 4 percent range since 1992. Let me ask you quickly the question I asked opposing counsel. Is there any dispute between you as to what Alaska law is with respect to prejudgment interest, if it applies? Would the 10.5 percent rate be the proper rate if we disagreed with your legal position? The statute has been repealed. I think if you apply the statute and the repealing clause, and if you leave aside the problem about simple versus compound interest, the Alaska rate is 10.5 percent simple interest. And so if we were to disagree with you on the law, what is your view about what should happen next? Would the case more properly be remanded to the district court to consider all these questions about compound versus simple and what the parties intended by that and so forth, or would we just do that here? If it were merely a matter of compounding the interest rate, or, excuse me, if it were merely a matter of calculating the interest rate, I would think the court could either do it itself or just indicate what the right answer was and leave it to the parties. Given the simple versus compound interest question, which I think does involve some interpretation of the stipulation, that if the court came out in agreement with Seahawk on that issue, the appropriate result would be a remand, so the effect of the stipulation would be taken into account. And presumably further settlement discussions could be had as well. At that point. Yes. If it came out that way. I understand. But we do think this case is controlled by Columbia Brick, and I would invite your attention to note seven on page 15 of our brief, which cites the other cases, the other maritime cases throughout the country, which have come to the same point and said that the interest rate in maritime cases ought to be determined uniformly. And that's important, even though this case, the rule of decision will be state law. Because, of course, this is a unique case. Was this, you know, in the end, was this a maritime case? This particular case, was this a maritime case? I thought we, you know, Judge Gabel points out. Well, I believe the correct analysis of Exxon Valdez won on this point. Is not that state law applies of its own force, but that admiralty tolerates the application of a state law, notwithstanding the national interest in uniformity. Take a look at Ballard Shipping. Well, whatever the reasoning, it said there's a state law claim here. No, it makes a difference, Your Honor, because take a look at Ballard Shipping, which is a decision of the First Circuit that was closely relied on in Exxon Valdez. What the First Circuit said, Rhode Island had a statute, not very dissimilar from the Alaska statute. And what the First Circuit said was you can apply this statute to this situation, but we reserve the right as admiralty judges to say in the next situation, the state law has gone too far. So what you have is exceptions to the general principle of uniformity and admiralty created to allow a state law statute, a state statute to be applied in admiralty. I think that's different from saying that the state law applies of its own force in a maritime situation. And we think that's what exists here, which is that the Alaska liability statute in Exxon 1 was allowed to apply, but this is still an admiralty case. Maritime law still controls to the extent that it needs to. And the interest rate issue is very important. If you think about settlement, most cases do not say, okay, here's my state law claim, here's my maritime law claim. You have different legal theories of relief. And one of the reasons for the maritime rule of uniformity of interest rates, and one of the very practical reasons for that, is that to have different interest rates for state law claims and maritime law claims in the same admiralty proceeding is going to produce uncertainty in every single case about what the right rate of prejudgment interest is. And every case will be like this one where you'll have to argue about which claim is state law, which claim is federal. The uniform rule that most courts have adopted prevents that and says, okay, we'll figure out the damages. We don't have to worry necessarily about whether the legal theory is state or federal. We'll just think about whether you have a chance of getting there. We'll figure out what the damages are, and then we know what the prejudgment interest rate is to be applied. Counsel, you've considerably exceeded your time. Thank you very much. And we'll hear now from the intervener on a topic we've heard nothing about so far. Good morning, Your Honors. May it please the Court. Eric Fleisig-Green, Department of Justice, presenting intervener appellee. Could you speak more loudly? United States. Yes. Is this better? Yes, thank you. My role here is a very limited one. Seahawk has challenged the constitutionality of the Admiralty Extension Act of 1948. We've set forth in our briefs the reasons that challenge is meritless. I am here simply to reassure you that the Act is constitutional, if you have any reason to doubt that. Well, our panel, as a three-judge panel, is bound by a prior holding of this Court that rejected a constitutional challenge. So if you want to speak. You're absolutely right, Your Honor. We don't dispute that. We think that's the way to go here. Mattson forecloses this challenge. Appellant suggests that Eleventh Amendment precedents in the Supreme Court subsequent to Mattson call that into question. There is no reason for many of those precedents to draw the conclusion that where, as here, a state is not a party to a lawsuit and the only function of federal law is, if any, to displace a state law damages remedy. The Eleventh Amendment is not implicated in that concern. No court has ever held that the Eleventh Amendment does that, and this Court should not hold that for the first time now. Unless there are any further questions. I hope you've enjoyed your trip to Seattle. I have, and I will continue to do so. Thank you, Your Honor. Thank you. I believe Mr. Schein has some rebuttal time remaining. Thank you, Your Honors. I'll try to make it brief. First, with respect to the constitutional argument, obviously this Court only reaches that in the event that the other issues are not dispositive in C. Hawke's favor. The Tenth Amendment is really our primary focus, not so much the Eleventh Amendment, and also changes in jurisprudence on the Tenth Amendment and the necessary and proper clause that's cited in the brief warrant reconsideration of Mattson. Unless there are questions, that's all I have on that topic. Just a few points that Mr. Dahm raised that I want to respond to. First off, I guess it was a question that Judge Graber raised about whether remand is necessary. When you look at page 8 of our supplemental excerpts of record, that's where Exxon said, quote, Exxon voluntarily agreed to compound interest and factored that into the computation of what it agreed to tender to C. Hawke. The stipulation itself, which is in the record, or the letter reflecting the agreement, doesn't really discuss compounding at all except to say, here's the amount of interest we're going to pay you, and if you break it down, you find out it's done at a Federal rate compounded. But there's no express statement about it. Is there anything in the settlement documents that suggests that the parties have agreed that the nature of the claim is maritime or under admiralty? No. No, there isn't. The – I mean, we recognize that the underlying grounding of the Exxon Valdez was a maritime tort. That's what Judge Holland said. Yes. And we recognize that, and that's accurate. However, the effect on land and the ruling in Exxon Valdez I, and the only claim C. Hawke ever filed, back when it filed its complaint, March 31st, 1989, was a state Alaska Act claim. And that's the claim that was reinstated. And, in fact, the court in Exxon Valdez I said any maritime claim we had would have been barred by Robbins for the point that Judge Beha raised, that it's purely economic law. So our only claim is state. So to get back to this little stipulation, in this brief where Exxon said this, it discusses how state law does not apply. I mean, at this point, Exxon knew that we were contending for the application of 10.5 percent under state law. And yet it maintained its position that it had stipulated to compound interest so the court didn't need to decide it. So it's not like we blindsided Exxon and made some, you know, got some agreement to compound interest at a time when it didn't know we wanted the state rate. Clearly, it knows, even now when it's saying it here, that we wanted the state  So I think it's important. compounded, and they agreed to compound at a time when they knew we wanted the state rate is the most accurate way, I think, to say it. Another point, this mystical idea that somehow there's a state action that becomes an admiralty action, I don't think that that's an accurate way to state it. The Supreme Court in Yamaha Motors says the exercise of admiralty jurisdiction does not result in automatic displacement of state law. And that's the way the courts talk about it over and over, including the Supreme Court. The question is, are we going to apply state law in this case, even though it might be an area in which there's an admiralty connection? But that doesn't make the state claim not an admiralty claim. And whatever it makes it, it still brings with it all the incidents under state law. This will not cover every single case. The vast majority of maritime cases are like Jones Act cases, unseaworthiness, maintenance and cure, salvage, collision at sea, all those kinds of cases. This will have no application. Marine cargo insurance, no application. This is not an overbroad rule. It's a unique circumstance where the only claim that Seahawk has is a state claim. Thank you very much. Thank you, counsel. We appreciate the arguments of all parties. They've been very interesting and helpful. And the case just argued is submitted.
judges: Graber, Paez, Bea